**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ROBIN MITCHELL-HOLLIMAN,**

          **Plaintiff,**

**-vs-**                         **Case No. 6:06-CV-1789-ORL-18KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

    This cause came on for consideration without oral argument on the Complaint filed by Robin Mitchell-Holliman, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 10, 11. The parties have filed memoranda of law. Doc. Nos. 13, 14. The case has been referred to me for issuance of a report and recommendation.

**I.     PROCEDURAL  HISTORY.**

    Mitchell-Holliman applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq*., and under the Supplemental Security Income for the Aged, Blind and Disabled Program

(SSI), 42 U.S.C. § 1381, *et seq*. (sometimes referred to herein as the Act).  She alleged that she became disabled on October 31, 2000.  R. 45-57, 228-30. Mitchell-Holliman's applications were denied initially and on reconsideration. R. 20-21, 26-27, 231-35.

Mitchell-Holliman requested a hearing before an administrative law judge (ALJ). R. 29.  An ALJ held a hearing on April 25, 2006.  Mitchell-Holliman, represented by an attorney, testified at the hearing.  R. 242-72.

After considering the testimony and the medical evidence presented, the ALJ determined that Mitchell-Holliman was insured under OASDI through September 30, 2004.  The ALJ found that Mitchell-Holliman had not engaged in substantial gainful activity since October 31, 2000, the alleged onset date of her disability. R. 14.

The ALJ concluded that the medical evidence showed that Mitchell-Holliman had spinal cord lipoma[1] and depression, and that she had had a laminectomy but still suffered from radiculopathy, which were severe impairments.  R. 14.  These impairments did not meet or equal any of the impairments listed in the applicable social security regulations.[2]  R. 16.

---

[1] "A fatty tumor that is frequently found in multiple[s], but is not metastatic. TABER'S CYCLOPEDIC MEDICAL DICTIONARY 1118 (Clayton L. Thomas et al. eds., 18th ed. 1997)[hereinafter Taber's]."  Doc. No. 13 at 4 n.1.

[2] The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories." *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

The ALJ found that Mitchell-Holliman had the residual functional capacity (RFC) to perform light work,[3] with the following nonexertional limitations: "moderate limitations in concentration, persistence, or pace, but she should be able to understand, remember, and carry out simple, routine tasks."  R. 16.

In reaching this conclusion, the ALJ purported to give significant weight to the opinions of Dr. Montoya and Dr. Tan.  R. 17. The ALJ also indicated that he had adopted the opinion of a reviewing physician regarding Mitchell-Holliman's RFC.  R. 16. The ALJ found that Mitchell-Holliman's reports of the limitations arising from her impairments were not entirely credible.  R. 17.

Because Mitchell-Holliman's past relevant work required more than a light level of exertion, the ALJ concluded that Mitchell-Holliman could not return to her past relevant work.  R. 17.  The ALJ concluded, without citation to supporting evidence, that Mitchell-Holliman's nonexertional impairments would have little or no effect on the occupational base of unskilled light work.  R. 18.  Relying exclusively on the Medical-Vocational Guidelines (the Grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that Mitchell-Holliman could perform work available in the national economy.  R. 18.  Therefore, the ALJ concluded that Mitchell-Holliman was not disabled.  R. 18.

---

[3] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567, 416.967.

Mitchell-Holliman requested review of the ALJ's decision. R. 236. She submitted a Medical Opinion Re: Ability to Do Work-Related Activities (Physical) from Dr. Tan to the Appeals Council. R. 238-41. On September 27, 2006, the Appeals Council issued a decision indicating that it had reviewed the additional evidence but found no basis to review the ALJ's decision. R. 6-8. Mitchell-Holliman timely sought review of this decision by this Court. Doc. No. 1.

## II.    JURISDICTION.

As Mitchell-Holliman has exhausted her administrative remedies, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III.    STATEMENT OF FACTS.

The facts of record are adequately stated in the ALJ's decision and in the parties' memoranda. Accordingly, I will only summarize the pertinent facts to protect Mitchell-Holliman's privacy as much as possible.

Mitchell-Holliman was 36 years old on the date she allegedly became disabled. R. 248. She completed school through the twelfth grade. R. 248.

Mitchell-Holliman previously worked as a bus driver and as a janitor. R. 249. She also worked briefly at a sales call center. R. 254-55. At the time of the hearing, she was looking for work, but she had financial difficulties finding transportation to interviews. R. 256.

Mitchell-Holliman was injured in 1999, and had a lumbar laminectomy the next year. R. 145, 251. A lipoma was found on her spinal cord which could not be removed.

R. 253. As a result, she had constant back pain, left leg pain, and occasional numbness in her right hand and left lower extremity. R. 260, 265-66; *see also* R. 133.

After examining Mitchell-Holliman in June 2001, Dachling Pang, M.D., confirmed that Mitchell-Holliman had loss of feeling in her left thigh through her groin, with pain. R. 131. After reviewing imaging tests, Dr. Pang opined that while he could perform further surgery on the lipoma, Mitchell-Holliman's pain might be due to arachnoiditis,[4] which would not be relieved by surgery. R. 130. Surgery was subsequently canceled because Mitchell-Holliman could not afford it. R. 129.

In June 2003, German Montoya, M.D., a neurosurgeon, began treating Mitchell-Holliman. R. 145. At the initial examination, Dr. Montoya noted that Mitchell-Holliman had slightly limited range of motion in her lumbar spine. Her motor function and gait were normal. R. 145. An MRI of the lumbar spine revealed excellent decompression. Dr. Montoya prescribed medication and encouraged Mitchell-Holliman "to try to obtain a lighter type of work . . . ." R. 144.

In December 2003, Josephine Estampador-Tan, M.D., a pain management specialist, began treating Mitchell-Holliman. At the initial examination, Mitchell-Holliman complained of back pain radiating to her left lower extremity. Dr. Tan observed that Mitchell-Holliman walked and moved with moderate pain and guarding. On examination, she observed tenderness on palpation and a diffuse spasm in the lumbosacral area. Mitchell-Holliman had no reflexes in the left knee and ankle, but a straight-leg raising test

---

[4] "[T]he inflammation of the arach[ ]noid membrane, a thin delicate, intermediate membrane of the meninges that enclose the spinal cord." Doc. No. 13 at 5 n.3 (quoting Taber's at 140).

was negative and sensation was intact. Dr. Tan's assessment was lumbar radicular syndrome, post laminectomy syndrome and chronic pain syndrome. R. 159. She treated Mitchell-Holliman with narcotic analgesics, muscle relaxers, and other medication. Nevertheless, Mitchell-Holliman continued to report back and leg pain. R. 151-58, 192-213.

As of January 2004, records of Family Practice Associates reflect that Mitchell-Holliman was being treated for depression. R. 136. On September 9, 2004, Earl Taitt, M.D., a psychiatrist, examined Mitchell-Holliman at the request of the SSA. He observed that she walked with a walker and that her gait was unsteady. R. 160. Mitchell-Holliman reported that she had mood swings and crying spells, with insomnia and low energy. R. 161; *see also* R. 216. Her concentration was poor, and her insight was limited. Dr. Taitt's diagnosis was major depression, recurrent, severe without psychotic features. He assessed her global assessment of function (GAF) at 50.[5] He opined that her prognosis was poor. R. 161. Reviewing professionals opined that Mitchell-Holliman would have moderate limitations in the ability to perform tasks requiring sustained concentration and persistence. R. 162-63, 176.

In October 2004, Shanti Singh, M.D., examined Mitchell-Holliman at the request of the SSA. She continued to complain of low back pain radiating down her left leg with

---

[5] The Global Assessment of Functioning ("GAF") scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). *Harold I. Kaplan, M.D. & Benjamin J. Sadock, M.D., Synopsis of Psychiatry* 299 (8th ed. 1998) (hereinafter *Synopsis of Psychiatry*). A score between 41 and 50 is defined as: "Serious symptoms (eg, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (eg, no friends, unable to keep a job)." *Id.*

numbness. In addition, she reported pain in her right leg and joints. She was also depressed. R. 181. Dr. Singh observed that Mitchell-Holliman could walk without using her walker. R. 182. Her reflexes were intact, and there was only slightly decreased sensation in her legs, more so on the left than on the right. R. 183. Her motor strength was intact in both legs, with no evidence of atrophy. She had fine dexterity. Dr. Singh opined that Mitchell-Holliman's symptoms were primarily subjective in nature. He concluded that "[s]he should have no problem with at least a sitting job." R. 183.

In October 2004, a reviewing physician opined that Mitchell-Holliman's ability to stand or walk was limited to 2 to 4 hours a day, and that she would be limited in the ability to push or pull using her legs. R. 185. She could only occasionally stoop or crouch, and she must avoid concentrated exposure to hazards. R. 186, 188. The reviewing physician commented as follows: "Sedentary RFC appropriate pain taken into consideration." R. 189.

An MRI taken in January 2006, revealed slightly bulging discs and some facet arthrosis and narrowing in Mitchell-Holliman's lumbar spine. R. 225.

Dr. Tan continued to treat Mitchell-Holliman regularly through August 2006 with muscle relaxants and strong pain medication. *See, e.g.,* R. 192-213, 241. In a physical activities questionnaire presented to the Appeals Council, Dr. Tan opined that Mitchell-Holliman could lift and carry less than 10 pounds. She could stand and walk less than 2 hours per day, changing positions every 45 to 60 minutes and walking around 30 to 45 minutes for 10 to 15 minutes at a time. She could sit about 2 hours per day, changing positions every 30 to 45 minutes. R. 238-39. She would need the option to sit or stand

at will. R. 239. She could occasionally stoop, but never twist, crouch, or climb stairs or ladders. R. 239. Dr. Tan opined that these limitations were due to pain. R. 239-40.

At the ALJ's hearing, Mitchell-Holliman estimated her pain to be 8 on a 10-point scale when using medication, and 9 or 10 without medication. R. 265-66. She reported having no reflexes on the left, and multiple spasms. R. 267. She also suffered dizziness on exertion. R. 265.

Mitchell-Holliman testified that she slept 4 to 6 hours during a normal day. R. 260. She would read or watch television during the day. R. 264. She could care for her personal hygiene. R. 264. She was able to fix meals and help with the laundry, with assistance from her son. R. 261-62. She was also able to fold clothes while sitting on the bed. R. 262. She did grocery shopping using a electric cart. R. 263.

Mitchell-Holliman averred that she could walk across a room without using a walker, and slightly longer distances using a walker. R. 262-63. She estimated that she could sit for 1 hour on a good day and 10-15 minutes on a bad day. She could stand 15 to 30 minutes. She could lift and carry 10 pounds. R. 267. She could not bend or twist. R. 268. She had difficulty holding objects, and difficulty writing. R. 269.

**IV.    STANDARD OF REVIEW.**

To be entitled to disability benefits under OASDI or SSI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" under the terms of the Act is

one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits. 42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits. In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability. A negative answer leads to a finding of "not disabled." *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1987).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden

temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988).

Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**V.   ANALYSIS.**

Mitchell-Holliman asserts four grounds supporting reversal. She contends that the ALJ erred by failing to give controlling weight to the opinions of Dr. Tan, a treating physician, and Dr. Singh, a consulting physician. She further asserts that the ALJ improperly evaluated her credibility and the functional limitations arising from pain. Finally, she contends that the ALJ erred by relying exclusively on the Grids at step five of the sequential evaluation rather than calling a vocational expert (VE) to testify about the work she could perform. These are the only issues before the Court.[6]

As discussed above, the ALJ concluded that Mitchell-Holliman could perform the full range of light work, which requires, among other things, the ability to stand or walk, off and on, for approximately 6 hours of an 8-hour workday. *See* Soc. Sec. Ruling 83-10, 1983 WL 31251. Dr. Tan, a physician who treated Mitchell-Holliman for nearly three years, opined that Mitchell-Holliman could stand and walk less than 2 hours per day.[7]

---

[6] The parties were advised that issues not specifically raised would be waived. Doc. No. 12.

[7] Although this questionnaire was not presented to the ALJ, the Court must nevertheless consider it in determining whether the decision of the Commissioner is

Dr. Tan's opinion was consistent with the opinion of the reviewing physician, upon whom the ALJ purported to rely, who opined that Mitchell-Holliman could stand or walk only 2 to 4 hours a day. Dr. Singh, a consulting physician, also noted that Mitchell-Holliman should be able to perform a sitting job. Finally, Dr. Montoya suggested the Mitchell-Holliman explore a lighter type of work, but he did not render an opinion that Mitchell-Holliman had the functional capacity to perform light work as defined by the SSA.

Thus, there is no evidence from any treating, consulting or reviewing physician that supports the ALJ's conclusion that Mitchell-Holliman could perform the full range of light work. Under these circumstances, substantial evidence does not support the ALJ's conclusion regarding Mitchell-Holliman's RFC. Because the ALJ did not have an opportunity to consider Dr. Tan's questionnaire, reversal and remand is appropriate for further consideration of Mitchell-Holliman's functional capacity.

On remand, if the ALJ concludes, as he did in the original decision, that Mitchell-Holliman has nonexertional postural, environmental and mental impairments, he must determine whether she can perform a wide range of work at a given exertional level despite these impairments. *See Broz v. Schweiker*, 677 F.2d 1351, 1363 (11th Cir. 1982)(remanding for consideration whether a claimant's non-exertional impairments significantly limited his basic work skills, and then, whether the Grids could be used), *vacated, Heckler v. Broz*, 461 U.S. 952 (1983), *adhered to on remand*, *Broz v. Heckler*, 711 F.2d 957 (11th Cir. 1983), *modified in other respects*, 721 F.2d 1297 (11th Cir. 1983). This finding must be supported by substantial evidence, *Foote v. Chater*, 67 F.3d

---

supported by substantial evidence. *See Ingram v. Comm'r*, 496 F.3d 1253, 1258 (11th Cir. 2007).

1553, 1559 (11th Cir. 1995), and can be drawn from suitable sources such as the *Dictionary of Occupational Titles* or from the testimony of a VE, *Welch v. Bowen*, 854 F.2d 436, 439-40 (11th Cir. 1988). If the ALJ finds that Mitchell-Holliman has nonexertional impairments that preclude a wide range of work at a given exertional level, he should call upon a VE at step five of the sequential evaluation to determine whether there is work available in the national economy that she can perform. *See Phillips v. Barnhart*, 357 F.3d 1232, 1243 (11th Cir. 2004).

## VI. RECOMMENDATION.

For the reasons stated herein, I respectfully recommend that the decision of the Commissioner be **REVERSED** and that this case be **REMANDED** for the Commissioner of the Social Security Administration for further proceedings. I further recommend that the Court direct the Clerk of Court to enter judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within **ten (10) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully recommended this 3d day of January, 2008.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record